to Orton's rights, Orton was absolutely released from all his obligations under the contract. Not even in the contract did Orton bind himself to permit successive houses to be rebuilt in case of fire; but, even if such construction could fairly be placed upon the contract, Orton was fully released from it by the conditions presenting themselves September 1, 1911. It was his right and his duty to protect his second mortgage by insisting upon a distribution of the insurance money according to the conditions of the policy. To have done otherwise would have been to permit the first mortgage to swallow up the second.

[3] No written condition of any contract gave the plaintiff the right to turn the insurance money over to Frey; on the contrary, the insurance policy forbade her to do so, and commanded her to apply it first upon her mortgage, and then upon Orton's mortgage. With her eyes wide open, knowing of Orton's equities and of Frey's failures, she deliberately violated the conditions of the policy and took her chances in defiance of Orton's refusal and heedless of Orton's rights. There is no excuse for her position; no equity in her contention.

The judgment should be affirmed, with costs. All concur.

---

### In re VAN ORDER.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

MUNICIPAL CORPORATIONS (§ 198*)—FIREMEN—PROCEEDINGS FOR REMOVAL—EVIDENCE.

In proceedings under Laws 1909, c. 55, § 138, as amended by Laws 1910, c. 266, to secure the discharge of a fireman, evidence that while in a saloon he used abusive language toward and spit upon a person with whom he had had a previous difficulty was insufficient to sustain a specific charge, a copy of which was served on defendant, "that he had been derelict in the performance of his official duties," where there was no evidence that he was on duty at the time.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 540–545; Dec. Dig. § 198.*]

Appeal from Order of Commissioner of Public Safety, City of Troy.

Charges were preferred against Joseph Van Order to secure his removal as a member of the fire department. From a determination finding defendant guilty, and discharging him from the department, he appeals. Reversed, and defendant reinstated.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

John F. & William H. Murray, of Troy, for appellant.
Charles I. Webster, Corp. Counsel, of Troy (John P. Judge, of Troy, of counsel), for respondent.

SMITH, P. J. This appeal is taken from the determination of the commissioner of public safety, pursuant to section 138 of chapter 55 of the Laws of 1909, as amended by chapter 266 of the Laws of 1910.

This section provides that any officer claiming to be aggrieved by the determination of the commissioner may appeal therefrom on questions of law. By section 137 of that law it is provided that a charge may be made by any person against a member of the fire department that has been negligent or derelict in the performance of his official duties, or is incompetent or without capacity to perform the same, "or is guilty of some delinquency seriously affecting his general character or fitness for the office." This charge must be in writing and served upon the accused member, whereupon he is entitled to a trial, after which, upon the determination by the commissioner of his guilt, he may be discharged from service. Prior to the trial of this appellant he had been served with charges pursuant to the statute. In those charges it was specified "that he has been derelict in the performance of his official duties as such houseman and member of the fire department of the city of Troy." Thereafter followed what is called specifications. Those specifications are as follows:

"That on the 10th day of December, 1912, at 7:30 o'clock p. m., the said Joseph Van Order was in a saloon conducted by Daniel Looby, at the corner of River and North streets, in said city, and, as the undersigned is informed and believes, was absent from his duty as a fireman without leave of his superior officer. That while the said Van Order was absent as aforesaid, and without any provocation or reason therefor on the part of the undersigned, the said Van Order maliciously, with intent to assault the undersigned, spit in my face, and at the same time called me 'lousy Dutchman,' 'Dutch bastard,' 'son of a bitch,' and also used other foul and obscene language directed at the undersigned, all in the presence of a number of persons in the said saloon."

These charges were made by one Jacob Pohl, an Austrian by birth, who had come to this country when about 30 years of age, and since coming to this country had lived at various places, and was then living in the city of Troy. From the evidence of Pohl himself it appeared that he was a drinking man, and that he more or less hung around the fire station, and had been ordered by Van Order to keep away. The evidence in support of the charges was the evidence of Pohl alone, who swore that, while he was in the saloon conducted by Looby, this appellant entered with one Fairbanks; that he took a drink of beer, and possibly another; and that he addressed to him the language stated in the charge, and took out of his hands a paper that he was reading. When he was going out of the door, he spat at him. Whether he was near enough so that he might reach him does not fully appear. On the other hand, the evidence in behalf of this appellant was by one Fairbanks, who was a contractor engaged in work in the city, and who swore that he took this defendant to the saloon, where they both had dinner; that the proprietor and his wife at times kept boarders and furnished meals; and that that night they had a beefsteak dinner in a room back of the saloon proper. He swears that there was no abusive language used by this appellant, no assault of any kind, and that he has no recollection that the appellant took anything whatever to drink. As this appeal is authorized only upon questions of law, we cannot review the finding of fact by the commissioner. If upon the testimony of the complainant himself, therefore, cause has been shown for the removal, this determination must stand.     .   .     .

One of the rules of the department is that an officer shall not enter a saloon for the purpose of drinking while he is on duty; further, that no permanent man will be allowed to frequent a saloon or drinking place. There is no evidence in the case that Van Order was upon duty at the time that he was in this saloon, and there clearly is not sufficient evidence to support a finding that he was a frequenter of saloons. However that may be, the charge which he was notified to defend is not for a violation of either one of these rules. He can only be convicted in this proceeding of "some delinquency seriously affecting his general character or fitness for the office." It can hardly be claimed that what happened in that saloon, even according to the testimony of the complainant himself, was such a delinquency as seriously affected his general character or rendered him unfit for his position. If he were off duty, he had the right to go into that saloon for the purpose of buying liquor. While in there he met a man with whom he confessedly had had trouble at the engine house. He made no assault upon him, and used no language which would render him unfit to act as a fireman in the city of Troy. The determination, therefore, of the commissioner that the complainant was guilty of the charge upon which he was being tried, is without evidence to sustain it.

During the trial witness Fairbanks, a witness for the defendant, was properly asked as to his relations with the defendant, and gave evidence from which it might be inferred that the defendant was a frequenter of this saloon. That this was the interpretation given the evidence by the commissioner would seem to be indicated by the act of the commissioner in calling especial attention to that part of the rule "that no permanent man will be allowed to frequent a saloon or drinking place." Without evidence to sustain the charge actually made, and upon which he was being lawfully tried, inference would seem to follow that he has been found guilty of a charge which was not served upon him, and which he was not called upon to defend. We conclude that the determination must be reversed, as unauthorized by the evidence, and the appellant is ordered reinstated in his position, from which he has been removed, with costs of this appeal.

Determination of commissioner of public safety reversed upon the law and facts, and relator reinstated, with costs of this appeal. The particular finding of fact of which the court disapproves is the finding of fact that the relator was guilty of the charges preferred. All concur.